IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

vs.                                                   **NO. CR 08-2967 RB**

**DAVID JOSEPH DUBE,**

      **Defendant.**

**MEMORANDUM OPINION AND ORDER**

      **THIS MATTER** came before the Court on the United States of America's Motion Regarding Attorney Conflict, filed on January 9, 2009. The United States seeks a hearing to determine (1) whether defense counsel, Mark D'Antonio, may ethically represent Mr. Dube in this matter and (2) whether Mr. Dube wishes to voluntarily waive his right to conflict-free counsel. Having considered the arguments of counsel, relevant law, and being otherwise fully informed, the United States' request for a hearing regarding Mr. D'Antonio's conflict of interest is **GRANTED**.

**I.    Background.**

      The following background narrative is based on the United States' recitation of Special Agent Ida D'Antonio's involvement in this case, which has not been substantiated. The Court will require sworn testimony from Agent D'Antonio to evaluate whether Mr. D'Antonio should be disqualified because of his conflict of interest.

      On or about October 29, 2008, the United States Attorney's Office for the District of New Mexico (hereinafter "USAO") contacted Agent D'Antonio of the Federal Bureau of Investigation (hereinafter "FBI") to open an investigation regarding Defendant David Joseph Dube's alleged commission of crimes against children on the Internet. By November 3, 2008, however, before

Agent D'Antonio took any further steps in the investigation, Senior Special Agent Jeff Mayfield and Ruth Baca of the Bureau of Immigration and Customs Enforcement (hereinafter "ICE") had assumed the lead role in the investigation.

On November 7, 2008, ICE obtained a search warrant for Mr. Dube's home. Agent D'Antonio played no role in obtaining the search warrant. Between November 3 and 9, 2008 Agent D'Antonio engaged in limited discussions with the USAO and ICE regarding the investigatory and operational plan. The search warrant was executed on November 9, 2008. During the execution of the search warrant on Mr. Dube's home, Agent D'Antonio and ICE Senior Special Agent Brian Koch met Mr. Dube outside of his home and asked him whether he would voluntarily agree to an interview. Agent D'Antonio did not enter Mr. Dube's home. Mr. Dube agreed to an interview and drove with Agent Koch to the FBI field office in Las Cruces, New Mexico. At the FBI field office, Agent D'Antonio, along with an ICE agent and a detective with the Las Cruces Police Department, interviewed Mr. Dube for approximately two hours. Agent D'Antonio provided no other assistance in this case.

On November 24, 2008, ICE agents arrested Mr. Dube for allegedly receiving and possessing child pornography. Mr. Dube's preliminary and detention hearings were initially set for December 1, 2008. Prior to the preliminary and detention hearings, Mr. Dube engaged Mark D'Antonio as counsel in this matter. Mr. D'Antonio is married to Agent D'Antonio. On December 1, 2008, Mr. D'Antonio requested a continuance of the preliminary and detention hearings, disclosed his relationship to Agent D'Antonio, and stated that he had not, and would not, exchange any confidential information relating to this matter with Agent D'Antonio.

The preliminary and detention hearings were rescheduled for December 4, 2008, at which time, Mr. D'Antonio entered a formal appearance as Mr. Dube's counsel. Mr. D'Antonio once

again disclosed his relationship to Agent D'Antonio and reiterated his promise to not exchange any confidential information relating to this matter with Agent D'Antonio. The Honorable Karen B. Molzen, United States Magistrate Judge, asked Mr. Dube, during the December 4, 2008 hearing, whether he knew of Mr. D'Antonio's relationship with Agent D'Antonio and whether he wished to proceed with Mr. D'Antonio as his attorney. Mr. Dube responded affirmatively to Judge Molzen's inquiries. On December 18, 2008, Mr. Dube was indicted on four counts of Receipt of Child Pornography and one count of Possession of Child Pornography.

**II.     Discussion.**

The Sixth Amendment entitles a defendant in a criminal case to the assistance of counsel of his own choice. *Powell v. Alabama*, 287 U.S. 45, 53 (1932). The Sixth Amendment also provides a correlative right to representation that is free from conflicts of interest. *Wood v. Georgia*, 450 U.S. 261, 271 (1981). "Where the right to counsel of choice conflicts with the right to an attorney of undivided loyalty, the choice as to which right is to take precedence must generally be left to the defendant and not be dictated by the government." *U.S. v. Perez*, 325 F.3d 115, 125 (2nd Cir. 2003). There are some instances, however, in which the nature of the conflict is such that the Court is required to disqualify counsel. *See Id.* (noting that disqualification is required if the attorney's conflict could jeopardize the integrity of the judicial proceedings).

New Mexico Rule of Professional Conduct 16-107 provides guidance on the ethical requirements that must be taken into consideration in determining whether Mr. D'Antonio may serve as counsel to Mr. Dube.

> A. [A] lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if: ...
> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to ... a third person or by a personal interest of the lawyer.

3

> B.  Notwithstanding the existence of a concurrent conflict of interest ..., a lawyer may represent a client if:
> (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
> (2) the representation is not prohibited by law;
> (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
> (4) each affected client gives informed consent, confirmed in writing.

N.M. Rules of Prof'l Conduct R. 16-107 (as amended by Supreme Court Order No. 08-8300-29, effective November 3, 2008).

Mr. D'Antonio's conflict of interest is suspect primarily because of what it may prevent him from doing in his defense of Mr. Dube. *Holloway v. Arkansas*, 435 U.S. 475, 490 (1978) (noting that for certain conflicts of interest "the evil ... is in what the advocate finds himself compelled to refrain from doing"). For example, Mr. D'Antonino has suggested in his Response that he may be willing to waive the cross-examination of Agent D'Antonio, a proposition which the Court finds to be entirely inappropriate. *See United States v. Winkle*, 722 F.2d 605, 610 (noting that "an actual conflict of interest would arise where defense counsel is unable to cross-examine a Government witness effectively"). Furthermore, the Committee Commentary to the New Mexico Rules of Professional Conduct advises that "[e]ven where there is no direct adverseness, a conflict of interest exists if there is a significant risk that a lawyer's ability to consider, recommend, or carry out an appropriate course of action for the client will be materially limited as a result of the lawyer's other responsibilities or interests." N.M. Rules of Prof'l Conduct R. 16-107, Committee Commentary.

The Court concludes, however, that the issue of whether Mr. D'Antonio may ethically serve as defense counsel for Mr. Dube is a factually intensive question that can best be resolved through a hearing. In addition, if Mr. Dube elects to waive his right to conflict-free counsel, the Court would be required to determine, through a hearing, whether this waiver was knowingly and intelligently

made. *Winkle*, 722 F.2d at 611.  Indeed, "[i]n order for a defendant to waive his right to conflict-free counsel, the trial judge should affirmatively participate in the waiver decision by eliciting a statement in narrative form from the defendant indicating that he fully understands the nature of the situation and has knowingly and intelligently made the decision to proceed with the challenged counsel." *Id.*

In preparation for the hearing, the Court advises Mr. Dube to solicit the advice of independent counsel regarding the risks and the potential adverse effects of foregoing his right to conflict-free counsel. Mr. Dube also should be advised by independent counsel of the existence and significance of Mr. D'Antonio's conflict of interest, of his right to a new attorney, and his right to a continuance.  Furthermore, Mr. Dube should be notified that, if he waives his right to conflict-free counsel and is convicted, he will not be able to pursue an ineffectiveness-due-to-conflict claim on appeal. *Moore v. United States*, 950 F.2d 656, 660 (10th Cir. 1991) (internal quotations omitted). After consulting with independent counsel, if Mr. Dube remains intent on waiving his right to conflict-free counsel, he should be prepared to provide a narrative statement indicating that he fully understands the nature of the situation and has knowingly and intelligently made the decision to proceed with Mr. D'Antonio as his counsel. *Winkle*, 722 F.2d at 611.  Mr. Dube should also be prepared to answer questions from the Court directed at determining whether his waiver of conflict-free counsel is knowing and intelligent. *See Id.*  Finally, if Mr. Dube intends to waive his right to conflict-free counsel, he should confirm this waiver in writing. N.M. Rules of Prof'l Conduct R. 16-107.

The United States is instructed to secure the attendance of Agent D'Antonio to testify at the hearing regarding her involvement in this case.  The parties also should be prepared to disclose whether they intend to call Agent D'Antonio as a witness in this case.

**III.    Conclusion.**

The Court believes that the issue of whether Mr. D'Antonio may ethically serve as defense counsel for Mr. Dube is a factually intensive question that can best be resolved through a hearing.

**WHEREFORE,**

**IT IS HEREBY ORDERED** that the United States' request for a hearing regarding Mr. D'Antonio's conflict of interest is **GRANTED**.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**